UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUNA SULTAN ABADI,                          Case No. 20-11560

                Plaintiff,                 Judith E. Levy
     v.                                         United States District Judge

ANDREW SAUL                                 Curtis Ivy, Jr.
COMMISSIONER OF SOCIAL                      United States Magistrate Judge
SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)

Plaintiff Muna Sultan Abadi ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Andrew Saul, Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Disabled Widower's Benefits under Title II of the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 16), the Commissioner's cross-motion for summary judgment (ECF No. 17) and the administrative record (ECF No. 13).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 16), **GRANT** Defendant's

motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's
decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges her disability began on January 1, 2002, at the age of 34.
(ECF No. 13, PageID.55, 301).  She filed an application for Disabled Widower's
Benefits[1] on July 6, 2017.  (*Id.* at PageID.253-55).  In her disability report, she
listed major depressive disorder, back pain, PTSD, myalgia, asthma, and panic
attacks as the injuries and conditions that limited her ability to work.  (*Id*. at
PageID.257).

Plaintiff's application was initially denied on November 2, 2017.  (*Id.* at
PageID.55, 180).  On November 21, 2017, she requested a hearing before an
Administrative Law Judge ("ALJ").  (*Id.* at Page ID.188).  On April 11, 2019, ALJ
B. Lloyd Blair held a hearing, at which Plaintiff and Annette K. Holder, the
vocational expert ("VE") in the matter, testified.  (*Id.* at PageID.123-39).  Wejdan

---

[1] The Plaintiff was previously found to be the unmarried widower of the deceased insured
worker and had attained the age of 50.  (ECF No. 13, PageID.57).  Hence, the claimant met the
non-disability requirement for disabled widower's benefits set forth in section 202(f) of the
Social Security Act.  (*Id.*).  The next step in the process is to assess whether Plaintiff's
impairments meet the definition of disability under section 202(f) of the Act.  "The definition of
disability for disabled widower's benefits is the same as for the standard disability case and the
five-step sequential evaluation process is applicable to disabled widower's benefit cases."
*Andrew V. v. Saul*, 2020 WL 4572682, at *2 (E.D. Wash. Aug. 7, 2020) (citing 20 C.F.R. §§
404.1505(a), 404.1520(a)(4)(i)-(v)).

Nafsu, an interpreter, was also present during the hearing.  (*Id.*).  On June 20, 2019, the ALJ issued an opinion, which determined Plaintiff was not disabled under section 202(f) of the Act at any time through the date of the decision.  (*Id.* at PageID.56).

Plaintiff submitted a request for review of the hearing decision.  (*Id.* at PageID.230).  However, on April 15, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.45).  Thus, the ALJ's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on June 12, 2020.  (ECF No. 1).

### B.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1521 *et seq.*, at **Step 1** of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity from January 1, 2002, the alleged onset date.[2]  (*Id.* at PageID.57).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the spine/myalgia; posttraumatic stress disorder (PTSD); depression; asthma; and schizoaffective disorder."  (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

---

[2] One point worth mentioning that undermines Plaintiff's position she qualifies as disabled under the Act is Plaintiff alleges she became unable to work in 2002 yet notably her earnings records demonstrate she worked as a cleaner in 2012 and 2014.  (ECF No. 13,PageID.242, 244).  Further, the ALJ assessed her work in 2014 reached the level of substantial gainful activity.  (*Id.* at PageID.60).

impairments that met or medically equaled the severity of one of the listed

impairments. (*Id.* at PageID.58). **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and

determined that Plaintiff had the RFC:

> to perform light work as defined in 20 C.F.R.
> 404.1567(b) except never use ladders, scaffolds, or ropes;
> she can occasionally use ramps or stairs, stoop, kneel,
> crouch, crawl, or balance; she should avoid concentrated
> exposure to extreme cold, extreme heat, humidity, fumes,
> odors, gases, and respiratory irritants; she cannot engage
> in commercial driving; she should avoid exposure to
> hazards including dangerous and unprotected machinery
> or work at unprotected heights; she cannot do job related
> calculations; she can read check list [sic] written in
> English and can learn by demonstration; she requires
> simple, repetitive tasks; she cannot engage in teamwork,
> do production line work, or work at a pace set by others.

(*Id*. at PageID.59). At **Step 4**, the ALJ determined Plaintiff was capable of

performing past relevant work as a housekeeper/cleaner as "[t]his work does not

require the performance of work-related activities precluded by the [Plaintiff's]

residual functional capacity." (*Id.* at PageID.62). Although Plaintiff is capable of

performing past relevant work, the ALJ also found that Plaintiff could perform

other jobs existing in the national economy. (*Id.* at PageID.62). Further, Plaintiff

has a limited education and is able to communicate in English. (*Id.* at PageID.63).

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant
can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§
404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as assembler, packer and inspector. (*Id.*). Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined in the Act, since January 1, 2002 through the date of the decision. (*Id.*).

### C. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920. The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the Plaintiff's impairment, he retains the residual functional capacity to perform

specific jobs existing in the national economy." *Richardson v. Sec'y of Health &*
*Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

>        **D.**     **Standard of Review**

>        The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*
*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive. . . .")).  Under
this standard, "substantial evidence is defined as '*more than a scintilla of evidence*
*but less than a preponderance*; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994) (emphasis added)).  In deciding whether substantial evidence supports the
ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in
evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509
(6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y*

7

*of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### E. Analysis and Conclusion

Plaintiff's brief is comprised of nothing more than conclusory arguments; it is bereft of record citations to objective evidence supporting her contentions. (*See* ECF No. 16, PageID.672-73). She contends she is unable to work as she "suffers from numerous underlying medical conditions which are documented in the medical record," but proffers no evidence to support her position. (*Id.* at PageID.672). She also alleges the ALJ failed to address her language limitations and references the presence of an interpreter at her hearing, however, she does little more to develop this argument. (*Id.*). Finally, she contends the finding that she is able to perform her prior work activity of cleaning homes runs afoul of the ALJ's RFC. (*Id.* at PageID.673).

The Commissioner argues the Court "should summarily affirm [its] decision as [P]laintiff fails to reasonably develop any argument against it." (ECF No. 17, PageID.680). However, the Commissioner, perhaps in an abundance of caution, proceeds to substantively address the points raised by Plaintiff.

As an initial matter, the undersigned agrees the type of arguments Plaintiff presents to the Court—issues adverted to in a perfunctory manner—are typically deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")). Nevertheless, in this instance, out of an abundance of caution, the undersigned has reviewed Plaintiff's and the Commissioner's arguments and agrees with the Commissioner that the ALJ's decision should be affirmed on a substantial basis review.

9

Plaintiff's overarching argument, outlined in a total of two pages, appears to be that the RFC is not supported by substantial evidence and thus the ALJ's findings at Steps 4 and 5 are incorrect.  (ECF No. 16, PageID.672-73).  Based on the undersigned's review of the record, the RFC is supported by substantial evidence and Plaintiff's overarching argument is unfounded.

The undersigned will summarily address all of the impairments identified by Plaintiff in her disability report as her brief, aside from referencing asthma in passing, does not set forth the specific impairments, allegedly confirmed by the medical record, that should be found to be disabling under the Act.  (*Id.* at PageID.572).

1.  <u>Back Pain</u>

The ALJ found Plaintiff's spinal issue warranted "some exertional limitation" based on the evidentiary record but noted that as Plaintiff's "strength and sensation have repeatedly been intact," this suggested she retained her exertional ability in general.  (ECF No. 13, PageID.61).  Plaintiff's treatment plan is limited to medication and therapy referrals which "does not suggest a disabling spinal disorder." (*Id.*).  Further, the ALJ found that limitation to light work was appropriate based on the record as discussed in further detail below.  (*Id.*).

From March 2019 to July 2019, Plaintiff saw Dr. Moussa Bazzi to discuss and address her pain issues.  (*Id.* at PageID.86-116).  At the conclusion of each

visit, Dr. Bazzi's treatment recommendations remained fairly conservative and primarily consisted of physical therapy, hot/cold therapy, and medication. (*Id.* at PageID.89, 97, 105, 112). Further, Dr. Bazzi expressed the goal of "weaning" Plaintiff off her prescription pain medication which demonstrates Plaintiff's impairment was not as debilitating as represented during her hearing. (*Id.*). During several of the visits, Dr. Bazzi also noted Plaintiff's lumbar spine was "within functional limits." (*Id.* at PageID.89, 96, 105). In addition , at her May 2019 visit, Plaintiff advised Dr. Bazzi she tried chiropractic manipulation, heat, and muscle relaxant; she exclaimed the "treatment provided mild relief." (*Id.* at PageID.103). On July 30, 2019, Dr. Bazzi met with Plaintiff again to discuss her back pain issues. (*Id.* at PageID.80). He noted Plaintiff's lumbar back exhibited "decreased range of motion and tenderness" and she was experiencing myalgias and muscle spasms in general. (*Id.* at PageID.83-84). During the visit, Plaintiff expressed an interest in restarting physical therapy although she participated in the treatment in 2015 but ended it because she felt it did not aid in alleviating her pain. (*Id.* at PageID.80, 129-30). She also mentioned she received injections for the pain at a hospital approximately three months prior to the office visit. (*Id.* at PageID.80). However, her overall physical examination was unremarkable. (*Id.* at PageID.82-84). Finally, during her hearing Plaintiff confirmed that to date she had not had an invasive procedure, such as surgery, performed on her back. (*Id.* at

PageID.130).

The objective medical evidence contained in the record undermines Plaintiff's representation during the hearing that her back pain was debilitating. Dr. Bazzi's treatment notes indicate (1) during a significant period of time Plaintiff's lumbar spine was "within functional limits," (2) her pain was being managed by a conservative treatment plan that he ultimately planned to restrict even further, (3) her strength was generally intact, and (4) her sensation in both her upper and lower extremities was intact. (*Id.* at PageID.86-116, 548). In fact, during a visit with Dr. Bazzi, Plaintiff declined to receive injections in her lumbar spine for pain (*Id.* at PageID.548).

It is plaintiff's burden at this stage to come forward with evidence establishing disability. *Cargile v. Comm'r of Soc. Sec.*, 2015 WL 2084701, at *4 (S.D. Ohio May 4, 2015) ("It is plaintiff's burden to provide evidence showing how her impairment has affected her functioning during the period of alleged disability."); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."). Plaintiff does not point to any medical evidence that establishes her back pain prevents her from performing light work. In fact, Dr. Bazzi encouraged Plaintiff to engage in a bit more physical activity to help

alleviate the pain she was experiencing.  Further, the ALJ's finding that Plaintiff's pain was not as debilitating as she represented during her hearing was supported by the conservative treatment Dr. Bazzi prescribed to Plaintiff while treating her. *Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 425-36 (6th Cir. 2001) (concluding an ALJ may rely on a plaintiff's conservative treatment plan in finding that his subjective complaints were questionable); *Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 508 (6th Cir. 2018) (finding it was appropriate for the ALJ to consider plaintiff's conservative treatment history and the fact that "plaintiff's pain was for the most part adequately controlled with medication" in discounting his claim of disabling pain"); *Ashworth v. Sullivan*, 1991 WL 278961, *7 (6th Cir. Dec. 30, 1991) (finding plaintiff's conservative treatment and use of mild medication undercut her complaints of disabling pain).

The undersigned finds that, based on Plaintiff's failure to proffer objective evidence to support her claim of debilitating back pain and her long-term conservative treatment, the ALJ's RFC assessment in regard to Plaintiff's back pain is supported by substantial evidence.

### 2. Asthma

Plaintiff contends the ALJ's finding that she was able to return to her prior work activity is in conflict with the RFC.  (ECF No. 16, PageID.673).  However, this argument is unsupported by the medical record and is undermined by the

discussion included in the ALJ's decision.

First, Plaintiff's record demonstrates that her asthma is fairly under control. The only references to her asthma are contained in records which focus on Plaintiff's other impairments and merely contain a note indicating that she has asthma and is using an albuterol inhaler to treat it. (*See, e.g.,* ECF No.13, PageID.95). Absent from the record are treatment or hospital notes indicating Plaintiff must be taken to the doctor's office frequently or emergency room due to an inability to control her asthma. Further, at no point during her testimony did Plaintiff discuss experiencing difficulties related to her asthma. In fact, Plaintiff testified that the last time she was hospitalized for difficulty breathing was in 2009. (*Id.* at PageID.131). The objective medical evidence and Plaintiff's testimony demonstrate that Plaintiff's condition is fairly under control.

Second, the ALJ's RFC directly addresses Plaintiff's asthma. In his decision, the ALJ explains "[t]he need for an inhaler for the asthma warrants work without concentrated exposure to temperature of humidity extremes and no concentrated exposure to environmental irritants." (*Id.* at PageID.61). Further, the RFC states "she should avoid **concentrated**[4] exposure to extreme cold, extreme heat, humidity, fumes, odors, gases, and respiratory irritants . . . ." (*Id.* at

---

[4] In her brief, Plaintiff provides "[t]he residual functional capacity required she avoid exposure to fumes, odors, gases and respiratory irritants." (ECF No. 16, PageID.673). Her statement fails to include the operative word "concentrated."

PageID.59) (emphasis added).  The ALJ presented an RFC containing the

aforementioned asthma-related limitations and the VE testified that an individual

with Plaintiff's RFC "would be able to perform the past work of the housekeeping

cleaner." (ECF No. 13, PageID.137).  The VE's testimony alone provides

substantial evidence to support the ALJ's finding that Plaintiff may return to her

prior work activity. *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496 (6th Cir.

2014) (holding a "vocational expert's testimony can supply substantial evidence so

long as the assumptions underlying that testimony accurately reflect the claimant's

physical and mental impairments.").  Despite the confirmation Plaintiff could

return to her prior work activity, the ALJ went on to ask the VE if there were jobs

in significant numbers that existed in the national economy, aside from

housecleaning, that an individual with Plaintiff's "vocational profile, relative to

age, education, work history" and RFC could perform.  (ECF No. 13, PageID.137).

The VE testified Plaintiff could be a bench assembler, packer, or inspector.  (*Id.* at

PageID.137-38).  In total, there are approximately 210,000 currently available

positions.  (*Id.*).  This additional testimony addresses Plaintiff's, albeit unfounded

and unsupported, concern regarding her inability to work because she is unable to

do housecleaning work activity due to a potential "exposure to fumes, odors, gases,

and respiratory irritants." (ECF No. 16, PageID.673).

     Based on the record, the ALJ's findings and RFC are supported by

substantial evidence.

### 3. PTSD, Panic Attacks/Anxiety and Depression

While the record contains numerous progress notes ranging from November 2015 to July 2019 from Arab American Chaldean Council discussing Plaintiff's PTSD, panic attacks/anxiety around driving, and depression, overall the treatment recommendations were fairly conservative  and mostly consisted of continued counseling, psychiatric follow-up and/or pharmatherapy.  (*Id.* at PageID.117, 356-466).  For example, Someswara Navuluri's July 1, 2019 treatment notes indicated Plaintiff needed counseling and therapy but that the symptoms of depression were "getting better."  (*Id.* at PageID.117).  Further, an assessment completed by Plaintiff resulted in a finding of "moderate depression" which called for a "[t]reatment plan, considering counseling,[p]sychiatric follow-up/or pharmatherapy."  (*Id.* at PageID.315, 359).  This evidence does not support a finding that Plaintiff experienced disabling mental impairments.  *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808 (6th 2012) (finding the ALJ's decision to reject the opinion of plaintiff's doctor that her mental impairments rendered her disabled was appropriate as throughout the relevant time period plaintiff received "essentially routine and conservative treatment for her allegedly disabling mental impairments").

The undersigned notes that during her hearing Plaintiff testified she was

hospitalized once because of her depression and inability to stop crying.  (*Id.* at

PageID.132-33).  However, this does not undermine the ALJ's finding as (1) she

was unable to recall exactly when this occurred and (2) she was unable to recall if

she had been hospitalized within the past 12 months due to her depression.  (*Id.*).

More importantly, in instances such as this where there is substantial evidence

supporting the ALJ's finding, the Court will uphold the decision "'even if there is

substantial evidence in the record that would have supported an opposite

conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273).

Thus, the undersigned finds based on the record the ALJ's findings

regarding Plaintiff's medical impairments is supported by substantial evidence.

4.  Literacy in English

Plaintiff contends the ALJ failed to address her limitations associated with

communication.  (ECF No. 16, PageID.672).  This argument is clearly unsupported

by the record.  First, the ALJ included the following limitation in the RFC to

address Plaintiff's language limitations: "she can read check list [sic] written in

English and can learn by demonstration . . . ." (*Id.* at PageID.61).  Although an

interpreter was present during her hearing, Plaintiff admitted she can understand

some English.  (*Id.*). Further, on her disability report Plaintiff answered

affirmatively that she can (1) read and understand English and (2) write more than

her name in English.  (*Id.* at PageID.256).  Lastly, Plaintiff testified that she has

her driver's license.  (*Id.* at PageID.128).  This demonstrates that, while limited, Plaintiff has some level of proficiency with the English language.  *Figueroa v. Comm'r of Soc. Sec.*, 2020 WL 6044364, at *15 (N.D. Ohio Oct. 13, 2020) (finding the ALJ's determination that plaintiff had a limited English proficiency was supported by substantial evidence based on representations made by plaintiff's counsel that he can understand and speak some English and plaintiff's statement that he is able to read some of the road signs while he is driving).  Ultimately, the ALJ found that Plaintiff was able to communicate in English for purposes of 20 C.F.R. § 404.1564.  (ECF No. 13, PageID.63).

Plaintiff's representations during the hearing and on her disability report support the ALJ's finding that she is able to communicate in English.  *Figueroa*, 2020 WL 6044364 at *15.  *Arguendo*, even if Plaintiff were unable to communicate in English this would not warrant a *de facto* finding of disability.  *Id.* at *14 ("The ability to communicate in English is relevant to the ALJ's education determination.  The regulations acknowledge that English is the dominant language of this county, so it may be difficult for someone who does not speak English to get a job.  However, the ability to communicate in English is *not* dispositive to the determination of disability."  (internal citations omitted) (emphasis added).

### F.  Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown

legal error that would upend the ALJ's decision.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 16), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## II.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 16, 2021                              s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge